UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

MARTY W. THOMAS, #331672 )
)
v. ) NO. 2:04-CV-284
)
JERRY HAYES, *et al.* )

# MEMORANDUM OPINION

Marty W. Thomas, a state prisoner in the Northeast Correctional Complex (NECX), brings this *pro se* civil rights action for declaratory and equitable relief under 42 U.S.C. § 1983, challenging the constitutionality of Tennessee's mandatory DNA (deoxyribonucleic acid) collection statute and implementing correctional policy, which applies to persons convicted of felony offenses. The parties have filed cross-motions for summary judgment; related supplements, responses, and replies; and various other motions. [Docs. 51, 52, 54, 60, 61, 62, 63, 4, 65, 66, 67, 68, 69 and 70].

I. **The Summary Judgment Motions**

A. Deposition Issue

As an initial matter, the plaintiff objects to the defendants' use of his deposition as support for their summary judgment motion. Relying on Rule 32(a) of the Federal Rules of Civil Procedure, he argues that he received only one day's advance notice of the deposition; that such notice was not reasonable; and that taking his deposition on such

short notice deprived him of the opportunity to contact an attorney to represent him and to prepare to be deposed. He asks that the defendants be prohibited from using his deposition.

First of all, the plaintiff's reliance on Rule 32(a) is misplaced because, as he himself recognizes, the rule excludes by its own terms depositions taken with leave of court and because his deposition was so taken. Fed. R. Civ. P. 30(a)(2).[1] Secondly, the Rules do not contain a particular minimum-notice period for depositions; all that is really required is that the notice be reasonable in light of the circumstances of the individual case. *Hart v. United States*, 772 F.2d 285, 286 (6th Cir. 1985).

Secondly, the plaintiff does not elaborate on his bare allegation that he could not prepare for his deposition in the allotted time-frame. The Court sees no indication in the deposition itself that the plaintiff was not prepared for it. Nor does he claim that he actually intended to contact an attorney to represent him during the deposition. Certainly, there is nothing in the record to show that he has requested counsel to be appointed in this case. Also, according to information he supplied in a sworn affidavit, he is indigent—not a salutary financial condition for one seeking to obtain legal representation in the private sector. Furthermore, it does not appear that the plaintiff was inconvenienced, since he gave a

---

[1] Rule 30(a)(2) requires leave of court to take a prisoner's deposition and dictates that such leave "shall be granted to the extent consistent with the principles stated in Rule 26(b)(2)." Rule 26(b)(2) establishes the power of a court to limit discovery and sets forth the considerations involved in managing discovery—none of which are pertinent in this situation.

telephonic deposition from the prison where he is confined, or that he had a scheduling conflict, in view of his status as an inmate.

Given these circumstances, the use of the plaintiff's deposition in this case is entirely proper and consistent with the federal rules governing discovery depositions. Therefore, his "Motion to Object" to the use of his deposition will be **DENIED**.

B. Standard of Review

Pursuant to Fed. R. Civ. P. 56(c), summary judgment is appropriate only where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." The Court must view the evidence and proper inferences made thereto in favor of the non-moving party. *Matsushito Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 578 (1986). The moving party bears the burden to demonstrate through pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). However, once a motion for summary judgment is made and supported, the non-moving party must present specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). The inquiry as to whether an issue is "genuine" is concerned with whether the evidence is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). When considering cross-motions for summary judgment, a court must evaluate each motion on its own merit and draw inferences against the party whose motion is being assessed. *In re Markowitz*, 190 F.3d 455, 463 n.6 (6th Cir. 1999).

C. Background

The factual scenario which follows was taken from the plaintiff's pleadings. On February 12, 2004, defendant Nurse Nelma Wagner came to the plaintiff's unit at NECX to extract a sample of the plaintiff's blood for the purpose of submitting it for DNA analysis and for subsequent inclusion in a DNA database. The plaintiff refused to provide a sample, explaining that his DNA was already on record, since his DNA fingerprint had been used at trial to connect him to a rape victim and, ultimately, to convict him of committing several sexual offenses.[2] He was then shown a copy of the state's DNA collection statute, *see* Tenn. Code. Ann. § 40-35-321, which requires a court or the TDOC commissioner (with respect to inmates in TDOC's custody whose DNA has not been submitted previously under the statutory scheme) to order a biological specimen from persons convicted of a felony offense for DNA analysis.[3] Again, the plaintiff refused, this time protesting that the convicting trial

---

[2]

Since the plaintiff is challenging only the DNA sample extracted in 2004, and not the one submitted and used as evidence in his 2003 aggravated rape convictions, this action is not barred by the *Heck* doctrine. *See Heck v. Humphrey*, 512 U.S. 477, 486 (1994) (where a civil judgment necessarily implies the invalidity of a state court conviction or sentence, a plaintiff's § 1983 action for damages must be dismissed, unless he shows that his conviction has already set aside or vacated).

[3]

The statute originally restricted the collection of inmates' DNA samples to specific categories of felonies (among them, sexual offenses), but was expanded to include any crime classified as a felony committed on or after July 1, 1998. The plaintiff was subject to either statutory requirement since his 2003 convictions for aggravated rape are not only classified as felonies, but also belong to the sexual-offenses category.

4

court had not ordered him to provide a DNA specimen.[4] Subsequently, he was shown a copy of Tennessee Department of Correction Policy No. 113.92, titled "DNA Specimen Collection and Documentation." This policy provides, in relevant part, that the institutional health administrator is responsible for ensuring that biological specimens are collected from inmates; that those who refuse to give the specimen will be issued a disciplinary write-up; and that such inmates will forfeit behavior credits until they agree to furnish the specimen. Despite the policy, the plaintiff still refused to permit defendant Nurse Wagner to take a blood sample.

      At some point, defendant Jerry Gentry, NECX's Health Administrator, arrived in the plaintiff's unit[5] and advised the plaintiff that, if he continued to refuse to give a blood sample, he would receive a disciplinary write-up; would go to the "hole;" and would forfeit good time credits. Defendant Gentry also warned that, until the plaintiff agreed to give the blood specimen, he would lose the opportunity to earn other sentencing credits and would never get out of prison. Finally, defendant Gentry stated that he would call employees in the

---

[4] Actually, the plaintiff's criminal judgment orders reflect that he was required to submit a DNA sample [Attachment to Doc. 66], notwithstanding his argument in one of his filings that the transcript shows that the trial court did not *verbally* order him to give a DNA specimen.

[5] Though the parties dispute the timing of defendant Gentry's arrival on the scene, the defendants have conceded this point for the purpose of their summary judgment motion. At any rate, the timing of defendant Gentry's appearance in the plaintiff's cell has played no part in the resolution of the motion.

laboratory of the Tennessee Bureau of Investigation, who would come to NECX and forcibly take the blood sample from the plaintiff.

The plaintiff evaluated his options, one of which as he saw it, was to give the sample and then attack the constitutionality of the statute in a federal lawsuit (obviously, he elected to pursue this option) and, thereafter, signed a consent form (which he now claims was coerced) and provided the DNA sample.[6]

D. Law and Analysis

    1. *Fourth Amendment Claims*

The challenged statute requires a person convicted of a felony offense committed on or after July 1, 1998, to provide a blood sample for the purpose of DNA analysis. *See* Tenn. Code Ann. Section 40-34-321(d)(1) (2004). The implementing TDOC policy, as noted earlier, requires that the samples be collected from eligible inmates by a health care professional and sets out the procedures that must be followed when collecting those samples.

The plaintiff first contends that Tennessee's mandatory DNA collection statute and the companion TDOC policy are unconstitutional because they violate the prohibition

---

[6]

While a search conducted pursuant to a valid consent is constitutionally permissible, the respondent, who bears the burden of establishing that the plaintiff's consent was voluntarily given, (i.e., that it was "the product of an essentially free and unconstrained choice by its maker" and not "the product of duress or coercion, express or implied"), has not argued in his motion that the plaintiff consented to the blood draw. *See Schneckloth v.Bustamonte*, 412 U.S.218, 222, 225, 227 (1973).

against unreasonable searches and seizures under the Fourth Amendment. They do so, he suggests, because the DNA specimens may be obtained without a showing of probable cause or individualized suspicion of additional criminal activity. The plaintiff further asserts that DNA testing of his specimen and inclusion of the results in a DNA data base infringes on his right to privacy. The defendants concede that the involuntary taking of a DNA sample constitutes a search, but argue, nevertheless, that the statute is not unconstitutional because such a search is not unreasonable.

The Fourth Amendment guarantees that "[t]he right ... to be secure ... against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV. Thus, the Fourth Amendment prohibits unreasonable searches and seizures, and it also protects "expectations of privacy," *see Katz v. United States*, 389 U.S. 347 (1967)—the "most personal and deeply-rooted" of which is the expectation that one has the right to be secure in one's person. *Winston v. Lee*, 470 U.S. 753, 760 (1985), *see also Olmstead v. United States*, 277 U.S. 438, 478 (1928) (describing "the right to be let alone" as the most comprehensive and valued of rights) (Brandeis, J., dissenting). The Fourth Amendment, however, does not proscribe all intrusions into the human body—only those which are not reasonable under the circumstances or those which are executed in an improper manner. *Winston*, 470 U.S. at 760 (citing to *Schmerber*, *v. California*, 384 U.S. 757, 768 (1966)). Generally, to be considered reasonable, a search must be conducted pursuant to a warrant, probable cause, or individualized suspicion of criminal wrongdoing. *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602 (1989). However,

in certain situations, a warrantless search may be reasonable, even absent particularized suspicion of criminal wrongdoing. *See id.* at 624 (stating that "a showing of individualized suspicion is not a constitutional floor, below which a search must be presumed unreasonable"). *See also Sampson v. California*, 126 S. Ct. 2192 (2006) (finding suspicionless search of state parolee did not violate the Fourth Amendment).

It is uncontested that the involuntary extraction of DNA is subject to the requirements of the Fourth Amendment. *See Skinner*, 489 U.S. at 616 (mandatory blood and urine samples implicate Fourth Amendment); *Nicholas v. Goord*, 430 F.3d 652, 658 (2nd Cir. 2005)(same with respect to compelled DNA specimens) (listing cases). Thus, the question becomes whether requiring inmates to provide DNA samples is *reasonable*.[7] Two different analyses have been employed to determine the constitutionality of statutorily-dictated DNA extraction: 1) the balancing test and 2) the special-needs test. The defendants submit that Tennessee's DNA statute passes constitutional muster under either test.

a) *Balancing test*: The first test, as set forth in *United States v. Knights*, 534 U.S. 112, 119 (2001), examines the totality of the circumstances to determine reasonableness.

---

[7] All fifty states and the federal government have DNA database statutes. These statutes apply not only to prisoners, but to parolees, probationers, and supervised releasees, though the majority of cases involve inmates. *See, e.g., Green v. Berge*, 354 F.3d 675, 676 (7th Cir. 2004); *Groceman v. United States Dept. of Justice*, 354 F.3d 411, 412 (5th Cir. 2004); *Roe v. Marcotte*, 193 F.3d 72, 74 (2nd Cir. 1999); and *Jones v. Murray*, 962 F.2d 302, 303 (4th Cir. 1992). The DNA extracted from Tennessee prisoners is stored in a data base maintained by the TBI and also in the Combined DNA Index System kept by the F.B.I., which is known by its acronym (CODIS).

This test is performed by balancing the degree of intrusion on an individual's privacy interest against the government's need for the search. *See also United States v. Sczubelek*, 402 F.3d at 175, 184 (3rd Cir. 2005) (federal DNA Act); *Jones v. Murray*, 962 F.2d 302, 307 (4th Cir. 1992) (Virginia's DNA statute); *Groceman v. United States Dep't of Justice*, 354 F.3d 411, 413 (5th Cir. 2004) (per curiam) (federal DNA Act); *United States v. Kincade*, 379 F.3d 813, 832 (9th Cir. 2004) (same); *Padgett v. Donald*, 401 F.3d 1273, 1277 (11th Cir. 2005) (Georgia's DNA statute).

The plaintiff insists that the DNA collection statute violates his right to privacy. The plaintiff's privacy interest in his DNA sample, according to the defendants' motion, is an interest in information regarding his identity. To show that the plaintiff's privacy concerns are not substantial, the defendants argue that the blood extraction is simple to perform and constitutes a minimal invasion of privacy; that the DNA collection statute is for identification purposes only; and that the plaintiff, as a convicted felon, has no privacy interest in his identity.

The defendants maintain that Tennessee has a compelling law enforcement interest in solving crimes and deterring future crimes; in absolving the innocent and convicting the guilty; and in maintaining a permanent record of the unique individual identification characteristics of those convicted of crimes, whose rate of recidivism is high. The defendants also argue that the statute leaves no room for discretion or arbitrary enforcement, since a DNA sample is required only from those convicted of a qualifying offense, and, thus, fulfills a primary purpose of the warrant requirement by ensuring that

DNA samples will not be ordered randomly or for wrongful purposes. The plaintiff disagrees with the crime-solving and crime-deterrence arguments, pointing out that some crimes go unsolved, despite the DNA database and that parolees and probationers commit crimes daily, although they know their DNA is on file. His counter-argument as to solving crimes is seriously undermined by the fact that his own 2003 rape convictions resulted, in part, from evidence that the DNA found on the victim matched the plaintiff's DNA.

After the plaintiff filed this action, the Tennessee Supreme Court addressed the constitutionality of DNA evidence which led to rape charges against an inmate, based on his DNA profile obtained under the DNA collection statute, while he was imprisoned on an unrelated charge. *State v. Scarborough*, Nos. E2004-01332-SC-R11-CD, W2004-01475-SC-R11-CD, W2003-02966-SC-R11-CD, 2006 WL 2471439 (Tenn. Aug. 23, 2006). The state supreme court unequivocally held that, under the totality of circumstances, a blood specimen taken pursuant to the statute in question was reasonable and did not violate the Fourth Amendment to the United States Constitution. In so holding, the state supreme court rejected the argument that, unless there is particularized suspicion, the Fourth Amendment is violated by requiring an inmate to surrender a DNA specimen. The state court reasoned that the purpose of DNA testing is to identify, precisely, a single individual, not to gather evidence of contemporaneous criminal conduct, and that imposing an individualized-suspicion requirement would belie the very purpose of the statute.

In evaluating the defendant's privacy interest involved in the process, the state supreme court found that the physical intrusiveness of the blood draw was minimal and that,

due to his status as a convicted felon, he had lessened expectations of privacy. Tennessee's interest was its interest in law enforcement, and more specifically, in accurately identifying lawbreakers and exonerating the innocent —an interest found not only to be weighty, but also to be substantially advanced by the DNA collection statute. Further, the use of DNA was not significantly different from the use of fingerprints and photographs to aid in identification. The State clearly had an interest in DNA sampling, given that using DNA profiles is far more accurate than other methods of identification; that one's DNA fingerprint cannot be disguised; and that using DNA profiles in such a manner provides a dramatic new law enforcement tool.

The state court further reasoned that the risk of arbitrary or capricious searches was eliminated, by virtue of the statutory provision which clearly designated those who were subject to the DNA blood draw. Concluding that the de minimus intrusion into a felon's diminished privacy interests was outweighed by the degree to which the DNA system advanced the State's law enforcement interest, the Tennessee Supreme Court ruled that the defendant's DNA sample taken pursuant to the DNA collection statute, was a reasonable search and in harmony with the Fourth Amendment.

This Court finds the analysis and reasoning of the Tennessee Supreme Court persuasive and sees no reason to disagree with its conclusion that the Fourth Amendment is not violated by the suspicionless taking and testing of a convicted felon's blood sample, under the authority of the DNA collection statute, so long as it is reasonable under the totality of circumstances. *See Sampson*, 126 S. Ct. at 2201 (applying totality-of-circumstances test

to find a suspicionless search of a California parolee conducted pursuant to state law to be reasonable and not prohibited by the Fourth Amendment); *Padgett*, 401 F.3d at 1281 (upholding Georgia DNA statute against a Fourth Amendment challenge after finding that the state's interest in creating incarcerated felon's identification record outweighed the minimal bodily intrusion of submitting saliva samples for DNA profiles).

      b) *Special needs test*: The second analysis involves the application of the "special needs" test—an extremely narrow exception to the Fourth Amendment's warrant and probable cause requirements—to searches conducted without individualized suspicion of criminal activity.[8] *Ferguson v. City of Charleston,* 532 U.S. 67, 77-79 (2001); *City of Indianapolis v. Edmond*, 531 U.S. 32, 37 (2000). To perform this assessment, courts must ask whether there are special needs apart from the normal needs of law enforcement and, if so, whether the search is reasonable when the special need is weighed against the intrusion on the individual's privacy interest. *Kincade*, 379 F.3d at 830-831 (citing additional cases); *Greene v. Berge*, 354 F3d. 675, 679 (7th Cir. 2004); *United States v. Kimler*, 335 F.3d 1132, 1136 (10th Cir. 2003); *Roe v. Marcotte*, 193 F.3d 72, 82 (2nd Cir. 1999). The Supreme Court has noted that the "general interest in crime control" does not qualify as a special need, *Edmond*, 531 U.S. at 41, and that such an exception is generally appropriate only where the

---

[8] In *Knights*, the Supreme Court left open the question as to whether a search without individualized suspicion would be reasonable under the Fourth Amendment." *Id.*, at 120 n.6. As noted in the prior discussion, the question has now been answered affirmatively in *Sampson*.

privacy interests implicated by a search are minimal and where "other safeguards" are available "to assure that the individual's reasonable expectation of privacy is not subject to the discretion of the official in the field." *New Jersey v. T.L.O.*, 469 U.S. 325, 342, n. 8 (1983) (citation omitted).

According to the defendants, Tennessee has an interest in maintaining a permanent identification record of convicted felons to solve future crimes accurately and expeditiously. They suggest that this represents a special need outside the ordinary scope of law enforcement because collecting and recording the DNA profiles of convicted felons is distinct from trying to discover evidence of a crime currently under investigation—the typical task of law enforcement. The defendants argue that the State's interest in keeping a permanent record of the DNA of convicted felons outweighs the plaintiff's privacy interest since, as a person convicted of a felony, he has no privacy interest in identification information and since the blood test involves only a minimal physical intrusion.

The Sixth Circuit recently addressed a federal defendant's Fourth Amendment challenge to a provision of 42 U.S.C. § 14135a—the federal counterpart to Tennessee's DNA statute, which requires a felon, as a condition of supervised release, to submit a blood sample for DNA testing. *United States v. Conley*, 453 F.3d. 674 (6th Cir. 2006). The defendant claimed that compelling her to submit a DNA sample, absent individualized suspicion of wrongdoing, was not justified under the "special needs" test of law enforcement and, thus, was unreasonable. The Sixth Circuit considered the defendant's argument that the DNA sample, which would contain medical and other personal information, in addition to

identification information, would be subject to repeated search, which she described as an impermissible intrusion into her privacy. It also considered the government's counter arguments that a blood test was minimally intrusive; that the DNA markers used for identification purposes carry no important medical data; and that the government had legitimate interests in collecting convicted felons' DNA to solve past crimes, to solve and deter future crimes by felons on release, and to protect communities into which convicted felons are released. Citing to decisions of three sister circuits which had concluded that the DNA collection met the requirements of governmental special needs, the Sixth Circuit likewise ruled that the special needs of law enforcement in collecting the defendant's DNA outweighed her greatly reduced expectation of privacy. (The Sixth Circuit also applied a totality-of-circumstances test to uphold the statute.)

As did the Sixth Circuit with respect to the federal DNA statute, this Court also finds that Tennessee's law-enforcement interest in collecting the plaintiff's DNA for a DNA database outweighs the minimal intrusion into his significantly reduced privacy interests, given his status as a convicted felon who is incarcerated. *See Groceman*, 354 F.3d at 413 (concluding that persons incarcerated after conviction retain no constitutional privacy interest against their correct identification). Therefore, requiring a DNA sample from a convicted felon to include in a DNA database qualifies as a special need of law enforcement.

2. *Other Claims*

The defendants assert that the plaintiff is claiming that forcing him to give a DNA sample, under the authority of the statute and TDOC policy, impinges on his privilege

14

against self-incrimination, as secured by the Fifth Amendment. The Court has examined the plaintiff's pleadings, but has been unable to locate such a claim in those submissions. Insofar as the Court can discern, the first reference by the plaintiff to a violation of his Fifth Amendment privilege was made in his deposition and the second in his motion for summary judgment. A claim must be raised in the pleadings; it cannot be raised in a motion for summary judgment, much less in a deposition. Though a *pro se* prisoner is to be given some latitude in the drafting of his legal papers, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), courts are not required to conjure up a claim which has not been pled.

Nevertheless, the plaintiff's purported claim that Tennessee's DNA statute and the collection of his blood sample pursuant to that statute impinges on his self-incrimination protection has no legal underpinnings and does not state a claim. As the defendants point out, in *Schmerber*, 384 U.S. at 761, 765, the Supreme Court held that the Fifth Amendment privilege against self-incrimination does not extend to the results of blood tests because such tests are not testimonial or communicative.

By the same token, to the extent that the plaintiff is claiming that his property interest in his DNA was taken without due process, in violation of the Fourteenth Amendment, the Sixth Circuit has held, in an unpublished case, that providing an inmate with notice and an opportunity to be heard when a DNA blood sample is taken, pursuant to Ohio's DNA collection statute, affords adequate procedural protections for the kind of *de minimus* taking involved. *See Williams v. Dep't of Rehab. & Corr.*, 3 Fed. Appx. 415, *417, 2001 WL 133127, *2 (6th Cir. Feb. 5, 2001). Like its Ohio counterpart, the Tennessee statute affords

15

notice and an opportunity to be heard—procedural protections of which the plaintiff was advised at the time his blood was drawn. And furthermore, TDOC Policy No. 113.92, of which he was shown a copy, and the consent form he signed served as a notice that, if he refused to provide a blood sample, he would be given a due process hearing by the disciplinary board. The Constitution requires no more.

The plaintiff's final claim is that the sum of $36.45 was deducted from his prison trust fund account in violation of the Constitution. (Policy No. 113.92 describes this fee as the cost TDOC is assessed for each specimen tested.) The defendants have not moved for summary judgment or offered any legal argument with respect to this claim. Nevertheless, the Court will address it sua sponte.

Prisoners have a protected, albeit limited, interest in their inmate trust account and cannot be deprived of this interest without due process. *Hampton v. Hobbs*, 106 F.3rd 1281, 1287 1287 (6th Cir. 1997). The framework which applies to this procedural due process claim is that announced in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *Mathews* requires the Court to examine the competing interests at stake and to balance: 1) the private interest affected by the official action; 2) the risk of an erroneous deprivation through the procedures used, as well as the probable value of additional procedural safeguards; and 3) the government's interest, including any fiscal and administrative burdens imposed by additional procedural requirements. *Id.* at 335; *see also Wilkinson v. Austin*, 125 S.Ct. 2384, 2395-2396 (2005) (applying *Mathews* factors to determine whether Ohio's policy governing prisoner's placement in super maximum security prison violated due process).

It almost goes without saying that the plaintiff has an interest in keeping his money in his account to use as he wishes (of course, within prison rules and regulations). The charge for the DNA sample of $46.15, though modest to a free world person, is likely to be significant to a prisoner such as the plaintiff, whose inmate trust account shows an average daily balance of only $21.22 for the six months preceding the filing of this lawsuit. Nevertheless, the DNA collection fee appears to be a one-time charge because a DNA fingerprint, so far as anyone knows, cannot be changed, *Scarborough*, __ S.W.3d __, __, 2471439, at *9 (observing that DNA "is claimed to be unique to each individual and cannot, within current scientific knowledge, be altered"), and because the statutory scheme, presumably, eliminates any need for additional DNA sampling by providing for permanent storage of the DNA profile obtained from a convicted felon's blood specimen. *See* Tenn. Code. Ann. § 40-35-32 and § 36-6-113(c).

Tennessee, as discussed, has a legitimate interest in obtaining a convicted felon's DNA for the DNA database to solve past and future crimes. The State also has an interest in attempting to defray the cost of the DNA analysis and in debiting the plaintiff's inmate trust account for a reasonable reimbursement of the cost. *See* 2006-2007 Budget for State of Tennessee, *available at* http://www.tnanytime.org/govfiles/0607%20Budget%20Volume%20I.pdf (last visited Sept. 13, 2006) (TDOC requires additional funding of 13.8 million dollars from the state budget.).

There is also little risk of error in the procedures which were provided to the plaintiff and no decrease in the already-low risk of error if a pre-deprivation hearing were

17

provided. The deduction was made in accordance with TDOC Policy No. 113.92, and the debit procedure is an unremarkable administrative matter, which carries with it no personal discretion and slight risk of error. *See Tillman v. Lebanon County Correctional Facility*, 221 F.3d 410, 422 (3d Cir.2000) (noting that collection of a housing cost "involve [d] routine matters of accounting, with a low risk of error"). Furthermore, the plaintiff could object to any erroneous assessment by filing a grievance—a post-deprivation procedure TDOC offers to inmates and one utilized by the plaintiff. *But see, Oldham v. Tennessee Dep't of Corr.*, 2000 WL 279910, *2 (Tenn. Ct. App. Mar. 16, 2000) (observing that an inmate grievance cannot be used to question the legality of a statute, rule, or order or its application to a set of facts).

E. Conclusion

For the aforementioned reasons, the Court finds that there is no genuine issue as to any material fact; that the defendants are entitled to judgment as a matter of law; and that, as a matter of law, the plaintiff is not entitled to judgment. Therefore, the defendants' summary judgment motion [Doc. 54] will be **GRANTED,** and the plaintiff's motion for summary judgment [Doc. 51] will be **DENIED**.

## II. Remaining Motions

A. Motion to Supplement

The plaintiff's motion to supplement his motion for summary judgment [Doc. 68] will be **GRANTED**. The Court has considered the legal arguments offered in the motion

in making the above rulings.

B. Motion to Dismiss Defendants' Motion

The plaintiff's motion to dismiss the defendants' motion for summary judgment is meritless and not authorized by any procedural rule. The motion [Doc. 60] will be **DENIED**.

C. Motion for a Writ

In his final motion, the plaintiff seeks issuance of a writ of habeas corpus ad testificandum to ensure his presence and testimony at trial. Since this case is being resolved on the basis of summary judgment, there will be no trial and no need for the plaintiff to testify. For this reason, his motion [Doc. 52] is now moot and will be **DENIED**.

A separate order shall enter.


**ENTER**:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE